No. 00-491

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 152

DAN ENSEY,

Plaintiff and Appellant,

v.

COLORADO CASUALTY, a

Colorado Corporation,

Defendant and Respondent.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Susan P. Watters, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Michael K. Rapkoch, Felt, Martin, Frazier, Jacobs & Rapkoch, P.C., Billings, Montana

For Respondent:

James R. Halverson, Christie L. Hobbs, Herndon, Sweeney & Halverson, P.C., Billings, Montana

---

Submitted on Briefs: May 31, 2001

Decided: August 9, 2001

Filed:

---

Clerk

Justice Jim Regnier delivered the Opinion of the Court.

1. ¶Dan Ensey appeals from orders issued by the Thirteenth Judicial District Court, Yellowstone County, dismissing his claim against Colorado Casualty for advance medical payments and living expenses. One issue is dispositive of Ensey's appeal: Whether the District Court correctly determined that Colorado Casualty provided

Ensey with a reasonable explanation for its denial of his claim for advance payments. We affirm.

## BACKGROUND

1. ¶On October 14, 1999, Ensey, an independent drywall contractor, fell from a tripod ladder while working for Bakken Drywall at a construction site in Billings, Montana. Shortly thereafter, Ensey, through counsel, sent a letter to Bakken Drywall informing it of his condition and requesting that Bakken Drywall notify its insurers of his claim. Colorado Casualty, Bakken Drywall's insurer, sent a letter to Ensey's counsel indicating that it was performing an in-depth investigation of Ensey's claim.

2. ¶On January 21, 2000, Ensey sent a demand letter to Colorado Casualty requesting advance payments of lost earnings and medical expenses. Ensey contended that Colorado Casualty's liability for these damages was reasonably clear because its insured, Bakken Drywall, breached its duty to provide safe scaffolding equipment. In his letter, Ensey described the accident as follows: Bakken Drywall had provided him with a Perry scaffold during the first two days of the job. On the day of his injury, two other persons working for Bakken Drywall took the Perry scaffold which he had been using and replaced it with two sawhorses. The time came when Ensey needed to reach higher in order to complete his work. However, despite numerous calls to Bakken, no appropriate replacement scaffold was supplied. Ensey used the only available means to reach the area where he needed to work, a ladder owned by ID Corporation. Ensey was on the second to the top rung when the ladder walked out from underneath him causing him to fall and sustain serious injuries.

3. ¶On February 1, 2000, attorney James R. Halverson sent a letter to Ensey's counsel stating that he had been retained by Colorado Casualty to represent the interest of Bakken Drywall and that Ensey's demand letter had been referred to him for a response. On March 27, 2000, Halverson informed Ensey that Bakken Drywall was declining his request for advance payments because liability was not reasonably clear. Halverson stated that his investigation indicated that there were multiple safe devices available and that Mr. Ensey personally chose the ladder he used over the other equipment that was available.

4. ¶On April 10, 2000, Ensey filed a complaint against Colorado Casualty. Ensey claimed that he was entitled to advance payments of lost wages and medical expenses prior to a final settlement of all of his claims pursuant to the Unfair Trade Practices Act. Ensey claimed that Colorado Casualty had not responded to his demand letter and sought a declaration that he was entitled to advance payments, an

injunction compelling Colorado Casualty to make such payments, and damages. On April 12, 2000, Ensey filed a motion for a temporary restraining order. The District Court granted Ensey's motion and ordered Colorado Casualty to appear and show cause why a preliminary injunction requiring advance payment of living and medical expenses should not be granted. Upon motion by Colorado Casualty, the District Court subsequently dissolved its temporary restraining order.

5. ¶The court held a hearing on Ensey's request for a preliminary injunction on April 25, 2000. On May 3, 2000, the court issued an order denying Ensey's preliminary injunction. The court concluded that Ensey was not entitled to advance payments because liability was not reasonably clear, noting that Colorado Casualty had provided two affidavits from Ensey's co-workers which stated that other scaffolding and equipment was available. The court determined that these affidavits created an issue of fact with regard to Colorado Casualty's liability. The court further determined that Colorado Casualty provided a reasonable explanation for its denial of advance payments. Lastly, the court concluded that Ensey's contention that Colorado Casualty did not respond to his demand letter was "disingenuous, at best." As a result, the court determined that Ensey did not have a cause of action and granted summary judgment in favor of Colorado Casualty. Ensey appeals.

## STANDARD OF REVIEW

1. ¶We review a district court order granting summary judgment de novo applying the same evaluation as the district court pursuant to Rule 56, M.R.Civ.P. *Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903. In *Bruner*, we set forth our inquiry:

The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the legal determinations made by a district court as to whether the court erred.

*Bruner*, 272 Mont. at 264-65, 900 P.2d at 903 (citations omitted).

# DISCUSSION

1. ¶Did the District Court err when it determined that Colorado Casualty provided a reasonable explanation for denying Ensey's claim?

2. ¶The Unfair Trade Practices Act provides that no person may "fail to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement." Section 33-18-201(14), MCA. The District Court concluded that Colorado Casualty complied with its duty to provide Ensey with a reasonable explanation for the denial of his claim through Halverson's letter dated March 27, 2000. In this letter, Halverson informed Ensey that Bakken Drywall was declining his request for advance payments because liability was not reasonably clear. Halverson stated that his investigation indicated that there were multiple safe devices available and that it was Mr. Ensey's personal choice to choose a ladder over other available equipment.

3. ¶Ensey contends that Colorado Casualty completely failed to respond to his demand for advance payments, let alone promptly provide a reasonable explanation for its denial of his claim. Ensey argues that the March 27, 2000, letter from Halverson is not evidence that Colorado Casualty complied with its duty because the letter was from the insured, Bakken Drywall, and not the insurer, Colorado Casualty. Ensey maintains that it would subvert the policy of the Unfair Trade Practices Act to let an insured deny advance payments because the insurer's duty to defend the insured could cause the insurer to assert that liability was not reasonably clear, even though the insurer has determined that there is no defense.

4. ¶The duties created by § 33-18-201, MCA, are duties clearly owed by the insurer and not the insured. Title 33, Chapter 18, Part 2 of the Montana Code Annotated is entitled "*Insurer's* Relations with Insured and Claimant." (Emphasis added.) We believe that in the instant case, however, Halverson's letter dated March 27, 2000, is sufficient to be considered a response from the insurer. In a letter dated February 1, 2000, Halverson informed Ensey that he had been retained by Colorado Casualty to represent the interest of Bakken Drywall, that Ensey's demand letter had been referred to him for a response, and that he would be reviewing the file and responding to Ensey's demand shortly. Ensey was well apprised that Colorado Casualty's response to his demand was being handled by Halverson.

5. ¶Given Colorado Casualty's notice to Ensey that it was responding through Halverson, the real issue is whether Halverson's letter contained an adequate response. In this regard, Ensey contends that Halverson's March 27, 2000, letter was

insufficiently detailed to be considered a reasonable explanation of Colorado Casualty's denial of his claim. Ensey argues that Halverson's response was conclusory in that it failed to identify other available safety devices, failed to explain how those devices could have provided for Ensey's safety, and failed to explain how Bakken Drywall satisfied its duties.

6. ¶Colorado Casualty responds that it provided a reasonable explanation for why it concluded that liability was not reasonably clear. Colorado Casualty notes that Ensey claimed liability was clear because no appropriate scaffold was supplied thus forcing him to use an unsafe ladder. It contends that Halverson's letter to Ensey directly responded to Ensey's claim of liability by informing Ensey that the investigation indicated that there were multiple safe devices available to perform the work tasks at hand and that it was Ensey's personal choice to choose the ladder he used over the other available equipment.

7. ¶Halverson's letter dated March 27, 2000, provided, in relevant part:

Bakken Drywall respectfully declines your request for advance payments because liability is not reasonably clear. Our investigation indicates that there were multiple safe devices available to perform the work tasks at hand. It was Mr. Ensey's personal choice to choose a ladder over the other equipment, [sic] that was available. If there are persons other than Mr. Ensey who will support his position, please let us know so we may speak with them. Again, thanks for allowing the additional time to respond.

1. ¶We believe that Colorado Casualty performed its duty to provide Ensey with a reasonable explanation of its denial of Ensey's claim. Colorado Casualty informed Ensey of the legal basis for its denial, namely that liability was not reasonably clear. It also provided Ensey with the factual basis for its conclusion that liability was not reasonably clear, informing Ensey that its investigation had revealed that other appropriate devices were available to safely perform the work at hand but that Ensey chose not to use them. This is not a general denial. Colorado Casualty promptly informed Ensey that it was denying his claim and provided the specific reason for its denial. Section 33-18-201(14), MCA, requires nothing more. Therefore, we conclude that the District Court correctly determined that Ensey was not entitled to a preliminary injunction or a declaratory judgment on the basis that Colorado Casualty had failed to comply with its duty to provide a reasonable explanation of its denial of Ensey's claim.

2. ¶Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ PATRICIA COTTER

/S/ TERRY N. TRIEWEILER