**Oren D. ETTER, Plaintiff,**

v.

**SAFECO INSURANCE COMPANY OF ILLINOIS, Defendants.**

**No. CV 00–149–M–DWM.**

United States District Court,
D. Montana,
Missoula Division.

March 22, 2002.

Kevin S. Jones, Christian, Samson & Jones, Missoula, MT, for Plaintiff.

Mark S. Williams, Williams & Ranney, PC, Missoula, MT, for Defendant.

## ORDER

MOLLOY, Chief Judge.

### I. Introduction

Plaintiff Oren D. Etter moves for summary judgment on his claim that Safeco acted in bad faith in violation of MCA 33–18–201 when it refused to advance-pay $60,000 for medical expenses incurred by Etter as a result of an accident with Safeco's insured. Etter claims Safeco did not question liability in the accident, nor did Safeco question whether Etter's medical expenses were caused by the accident. Safeco also moves for summary judgment, arguing it did not act in bad faith because

it offered to pay Etter the policy limits of $100,000 and its insured would not consent to any payment without a full release of claims against the insured. For the reasons set forth below, Etter's Motion for Summary Judgment is granted and Safeco's motion for summary judgment is denied.

## II. Factual Background

On December 11, 1996, Plaintiff Oren D. Etter was involved in an automobile accident on Highway 93 North near Lolo, Montana. A vehicle owned by the Gulley Family Trust (the Trust), and driven by Helen Gulley, crossed over the center line and collided with Etter's vehicle. Helen Gulley died from injuries sustained in the accident; Etter sustained serious injuries. Ms. Gulley's vehicle was insured under a policy from Safeco Insurance Company of Illinois. The policy had liability bodily injury limits of $100,000 per person and $300,000 per occurrence and a property damage limit of $50,000 per occurrence.

On February 5, 1997, Safeco offered to settle Etter's bodily injury claim for the $100,000 policy limit, conditioned upon Etter signing a release of any claims against Ms. Gulley's Estate (the Estate) or the Trust. Over the ensuing 14 months, Safeco wrote to Etter on at least four occasions to remind him that the $100,000 plus release offer remained open. Etter apparently did not respond to the offer during this period. In March 1997, Safeco settled claims for damage to Etter's vehicle and other personal property for $12,172.

On April 17, 1998, Etter wrote to Safeco and rejected Safeco's $100,000–plus–release offer. Etter, who apparently was not represented by an attorney, counteroffered to settle for $850,000 with a full release of all claims against Safeco and its insured. As an alternative, Etter offered to accept $100,000 from Safeco and sign a release of claims against Safeco, but not against the Estate or the Trust. Safeco apparently rejected Etter's offer. On May 6, 1998, Etter withdrew his original offer and increased his demand to $870,000. Etter gave Safeco until June 1, 1998 to accept his second offer.

On May 4, 1998, Safeco received a letter from John Bohyer, the attorney representing the Estate. Bohyer informed Safeco that due to Etter's high demand, "any advance payment by Safeco ... without a release would significantly jeopardize [the Gulley] estate." Bohyer also informed Safeco it was not clear what caused the accident because "[t]he mere fact that she crossed the center line does not establish negligence." On May 22, 1998, Safeco received a letter from the attorney representing the Trust requesting that Safeco not settle with Etter without receiving a full release for the Estate and the Trust.

At some point after making his last offer, Etter hired counsel. On October 1, 1998, Etter's attorney informed Safeco that Etter would not sign a release of claims against the Estate or the Trust. Etter's attorney also informed Safeco that Etter had incurred significant medical bills and debt in the amount of $60,000. Etter's attorney requested that Safeco advance pay $60,000 to cover medical expenses Etter had already incurred.

On October 18, 1998, Safeco received a letter from Bohyer reminding Safeco of its fiduciary duty to its insured and renewing his demand that Safeco "not pay the policy proceeds without an appropriate release of the estate." On October 26, 1998, Bohyer informed Safeco that the estate would not consent to any advance payment of medical expenses without a signed release.

On January 13, 1999, Etter filed suit against the Estate, the Trust, and Safeco. On March 5, 1999, Etter stipulated to dismiss the suit against Safeco without prejudice pending the outcome of the suit against the Estate. On June 2, 1999, Montana State District Judge John Henson

dismissed Etter's claim against the Estate, finding the one-year statute of limitations on claims against an estate had run. On June 28, 1999, Etter accepted a $100,000 settlement from Safeco and released all claims against the Trust. Etter reserved his right to bring a bad faith claim against Safeco.

### III. Discussion

Under Rule 56(c), Fed.R.Civ. P, summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The parties agree there are no material facts, as both have moved for summary judgment.

### A. Did Safeco act in bad faith when it refused to advance payment for Etter's medical expenses?

Under Montana law, an insurer may not "neglect to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear," nor may an insurer "fail to promptly settle claims, if liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage." Mont.Code Ann. § 33–18–201(6), (13).

■ In *Ridley v. Guaranty National Insurance Company*, Keith Ridley was injured in an accident caused by Guaranty National's insured. Ridley's attorney informed Guarantee National that Ridley could not afford medical expenses for injuries Ridley sustained in the accident and requested that Guaranty National pay those expenses. 286 Mont. 325, 328, 951 P.2d 987, 988 (1997). While Guaranty National admitted its insured was 90 percent at fault, Guaranty National refused to pay Ridley's medical expenses without a full final settlement. Ridley filed suit seeking a declaratory judgment that Guarantee National was obligated to pay medical expenses where liability was reasonably clear, even without a final settlement. *Id.* at 328, 951 P.2d at 989. The Montana Supreme Court held subsections (6) and (13) of § 33–18–201 require an insurer to pay an injured third party's medical expenses in advance of settlement when liability for the accident is reasonably clear and it is "reasonably clear that the [medical] expense is causally related to the accident." *Id.* at 334, 951 P.2d at 992.

In this case, Safeco argues it did not act in bad faith as a matter of law by following its insureds' requests to refuse any payment to Etter without a full release from liability for the Estate and the Trust. Safeco contends it is entitled to condition payment of policy limits on receipt of a full release of its insureds and that it was "not appropriate for Safeco to 'advance pay' medical expenses when it was already offering to pay the full policy limits." Safeco also argues that liability for the accident was not reasonably clear because the Estate's attorney said so.

Etter does not dispute that Safeco was obligated to condition payment of the policy limits on receiving a full release of its insured, however, Etter argues Safeco was obligated under *Ridley* to pay medical expenses incurred by Etter because liability for the accident was reasonably clear. Etter maintains Safeco never questioned Ms. Gulley's liability for the accident and never questioned whether Etter's injuries were caused by the accident. Etter contends Safeco's reliance on *Juedeman v. National Farmers Union Property & Casualty Co.* is misplaced.

Safeco argues *Ridley* requires an insurer to advance pay medical expenses only "where a settlement has not yet been reached, nor policy limits offered." Be-

cause Safeco offered to pay Etter the policy limits, it was not obligated to advance payment for Etter's medical expenses absent a full settlement, including a release of its insured. Safeco contends under *Juedeman*, Etter's claim is barred as a matter of law because Safeco offered to settle for policy limits. Safeco further contends *Ridley* does not apply when the insurer has offered to pay policy limits.

While *Ridley* did not overrule *Juedeman*, it did distinguish it. In *Juedeman*, Erich Burkstrand was a passenger who sustained serious injuries in a one-vehicle accident. *Juedeman*, 253 Mont. 278, 280, 833 P.2d 191, 192 (1992). Erich's mother sued Farmers Union claiming Farmers Union acted in bad faith when it conditioned a policy limits settlement of Erich's bodily injury claim upon the mother's release of the insured's estate from any future loss of consortium claim. *Id.* The mother claimed Farmers Union engaged in leveraging and failed to promptly settle Erich's claim in good faith, violating MCA § 33–18–201(6) and (13). However, the Montana Supreme Court held Farmers Union had not acted in bad faith as a matter of law because Farmers Union was willing to settle and had offered a settlement. *Id.* at 280–81, 833 P.2d at 193. The Montana Supreme Court also held there was no leveraging because the insurer was not manipulating two coverages, but rather, all claims came under the same coverage. *Id.* at 281, 833 P.2d at 193. The Montana Supreme Court found it was the mother's conduct in refusing to accept Farmers Union's conditional settlement that caused delay. *Id* at 282, 833 P.2d at 193.

▪ Safeco attempts to expand the rule in *Juedeman* while shrinking the rule of *Ridley* and spends much of its time de-fending its decision to condition payment of the policy limits on Etter releasing all claims against the Estate and the Trust. Etter does not allege Safeco acted in bad faith in conditioning a policy limits settlement on Etter's execution of a release of Safeco's insured. Rather, Etter charges that once he requested payment of medical expenses, Safeco was obligated to pay those before full settlement unless Ms. Gulley's liability for the accident was not reasonably clear or Etter's injuries and medical expenses were not caused by the accident. Etter contends Safeco did not dispute either of these points.

In *Ridley*, the Montana Supreme Court concluded that "leveraging of undisputed claims in order to settle disputed claims is exactly what the Montana Legislature sought to prohibit when it enacted § 33–18–201(13)." *Ridley*, 286 Mont. at 336, 951 P.2d at 993. The Montana Supreme Court further noted "the financial stress of being unable to pay medical expenses can lead to the ill-advised settlement of other legitimate claims in order to secure a benefit to which an innocent victim of an automobile accident is clearly entitled." *Id.* at 335, 951 P.2d at 993.

Leveraging is what Safeco was doing to Etter. Safeco would not pay any of Etter's medical expenses absent a full release of all future claims against its insured. Safeco claims it was only acting in its fiduciary capacity and protecting the best interests of its insured. However, Safeco was really attempting to limit its own exposure, and the exposure of the Estate and the Trust by forcing Etter into a $100,000–plus–release settlement. Safeco further claims it was only following specific requests by attorneys for the Estate and the Trust not to pay any medical expenses absent a full release.[1] While the parties

---

1. The fundamental issue in a case recently tried before this Court, Burgett v. Safeco, CV 99–13–BU, was the contents of an opinion letter interpreting the *Ridley* case written for

do not include a copy of the insurance policy, it is reasonable to assume the policy contained language like that in *Watters v. Guaranty National Insurance Co.* granting Safeco "the right 'to settle any claim or suit.'" 300 Mont. 91, 109, 3 P.3d 626, 638 (2000). Safeco's contention that it was only following the wishes of its insured does not excuse its refusal to advance payment for Etter's medical expenses.

Safeco also cites *Watters* as confirming *Juedeman* is the "controlling authority for this situation." In *Watters*, the Montana Supreme Court held that "where liability resulting from an automobile accident is reasonably clear, and a third-party claimant's damages undisputedly exceed [statutory] mandatory minimum policy limits ... the prompt, fair, and equitable settlement of such claims cannot be forestalled by an insurer based on an illusory bad faith or breach of contract claim that its insured may bring." *Id.* at 109, 3 P.3d at 638.

The issue in this case is not whether Safeco could require a release of its insured as a condition of paying the policy limits; the issue is whether Safeco was required to pay Etter $60,000 for medical expenses incurred as a result of the accident. Under *Ridley*, Safeco was obligated to pay so long as liability for the accident was reasonably clear and it is reasonably clear that the expense is causally related to the accident. *Ridley*, 286 Mont. at 334, 951 P.2d at 992. *Watters* does not alter this rule.

As an alternative, Safeco argues liability for the accident was not reasonably clear. Safeco cites a letter from Bohyer indicating he could not "with any degree of certainty tell you that the accident occurred as a result of negligence by Helen Gulley." Safeco claims under *Ensey v. Colorado Casualty*, Bohyer's letter gave it a reasonable basis for refusing to advance pay medical expenses.

In *Ensey*, the injured third party demanded advance pay of medical bills resulting from a fall from a ladder. The attorney hired by Colorado Casualty to represent its insured wrote a letter to the injured third party stating the insured would not advance pay medicals because liability for the accident was not reasonably clear. 2001 MT 152, ¶¶ 2–4, 30 P.3d 350, ¶¶ 2–4. The Montana Supreme Court held Colorado Casualty, through its insured's attorney, provided a reasonable basis for denying the injured third party's claim for advance medical payment.

Contrary to Safeco's assertion, *Ensey* does not stand for the proposition that an insurer can rely on an insured's attorney's determination whether liability is reasonably clear in deciding whether to advance pay medical expenses. In *Ensey*, the letter denying advance payment went from the insured's attorney to the injured party. In this case, Bohyer's letter with his opinion regarding liability was sent to Safeco. There is no indication Etter or his counsel received this letter.

Further, Safeco never communicated to Etter or anyone else that it questioned Ms. Gulley's liability for the accident, Safeco offered to settle Etter's claim for the policy limits less than two months after the accident, and Safeco paid Etter for loss to his vehicle and personal property in the vehicle. Suffice it to say, none of these items would be true if Safeco truly was

---

Safeco by Bohyer's firm, Phillips and Bohyer. The letter advised Safeco that they should demand a release of the insured or an agreement not to claim damages in excess of policy limit before settling. In this case, Bohyer is representing the Gulley Estate and is threatening suit against Safeco if they do not follow his advice. Ironically, had Safeco paid Etter without obtaining a release of its insured, Bohyer likely would have been relying on his own advice to claim Safeco violated its fiduciary duty to the Gulley Estate.

questioning Ms. Gulley's liability for the accident.

Additionally, violation of a motor vehicle statute is negligence as a matter of law. *Craig v. Schell*, 293 Mont. 323, ¶ 29, 975 P.2d 820, ¶ 29 (1999). The situations where a driver who violates a motor vehicle statute will not be negligent as a matter of law "are quite rare." *Id.* at ¶ 34, 975 P.2d 820. Ms. Gulley crossed the center line, violating Mont.Code Ann. § 61–8–321. While having a heart attack may take her violation out of negligence as a matter of law, there is no credible evidence Ms. Gulley suffered a heart attack or any other medical condition. Only Bohyer's assertion that such an event may have happened. Safeco did not investigate whether a medical incident occurred, nor did Safeco even raise the issue at any time before briefing began on the parties' motions for summary judgment.

Furthermore, Bohyer's suggestion that liability required a "degree of certainty" is contrary to the well known standard of proof in civil law. Under all the facts, it was more likely than not Ms. Gulley was negligent. That it reasonably clear nad that is what triggers the *Ridley* duty to pay medical expenses caused by the insured's negligence.

**B. Did Safeco have a reasonable basis for denying Etter's claim, even if it was obligated to advance-pay Etter's medical expenses?**

Safeco claims that under *Watters* it had a reasonable basis in the law for refusing advance-pay Etter's medical expenses, even if it had an obligation to do so. In *Watters*, the Montana Supreme Court's held Guaranty National had a reasonable basis for denying the injured party's claim for payment of the statutory mandatory minimum liability limits without a release of its insured. The Montana Supreme

Court concluded that at the time the dispute arose, *Juedeman* was the lone precedent and legally conclusive, and "a plain reading of the available case law at the time gave Guaranty a reasonable basis in law" to deny the claim. *Watters*, 300 Mont. at, 3 P.3d at 639.

That is not the case here. *Ridley* was decided on December 24, 1997. Etter's attorney requested advance payment of medical expenses on October 1, 1998. Thus, the law at the time obligated Safeco to pay Etter's medical expenses before final settlement, so long as liability was reasonably clear and it was reasonably clear Etter's medical expenses were causally related to the accident. Safeco did not dispute Ms. Gulley's liability, nor did it take issue with Etter's medical expenses. Safeco's reliance on *Juedeman* to deny advance medical payments after the *Ridley* decision came down was misplaced and it cannot now claim a reasonable basis existed for it to do exactly what the law said it could not do.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion for Partial Summary Judgment on liability (dkt # 30) is GRANTED.

IT IS FURTHER ORDERED that Defendant's Cross–Motion for Summary Judgment (dkt # 41) is DENIED.